IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUNO CAMPOSTRINI,

    Petitioner,                      No. CIV S-07-2132 JAM GGH P

    vs.

MICHAEL MARTEL, Warden, et al.,[1]

    Respondents.                 ORDER &

                                      /        FINDINGS AND RECOMMENDATIONS

<u>Introduction</u>

        Petitioner, proceeding with appointed counsel, has filed a habeas petition pursuant to 28 U.S.C. § 2254. Petitioner, charged with seven child molesting/lewd acts counts and one-strike enhancements based on having been convicted of a serious felony in 1995, pled no contest to one count, forcible lewd act upon a child (Cal. Penal Code § 288(b)(1), and admitted enhancements under Cal. Penal Code § 667.61(a) & (d). Supplemental Points and Authorities (Supp.), pp. 1-2. Petitioner was sentenced in Butte County Superior Court to a term of 25 years to life in prison on January 13, 2003. Id., at 2; respondent's Lodged Document (Lod. Doc.) 1.

---

[1] Respondent asks that the court substitute the name of the Acting Warden of Mule Creek State Prison, Michael Martel, as respondent in place of D.K. Sisto, which request the court hereby grants.

1

In the supplemental points and authorities, petitioner's claim is framed as a denial of due process and effective assistance of counsel when his guilty plea was entered without the ability to intelligently understand the charges against him and his counsel failed to investigate the cause. Supp., pp. 6-19.

Motion to Dismiss

Respondent moves for dismissal on the ground that the petition is barred by the one-year AEPDA statute of limitations. Motion to Dismiss (MTD), p. 1.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner filed a <u>Wende</u>[2] brief on appeal to the California Court of Appeal, Third District, which appeal was subsequently abandoned by petitioner and dismissal granted on July 9, 2003. Supp., p. 3, MTD, p. 2, Lod. Docs. 2-3.  Pursuant to Cal. Rules of Court, Rule 8.500

---

[2] Petitioner notes that a <u>Wende</u> brief is one filed in accordance with <u>People v. Wende</u>, 25 Cal. 3d 436, 158 Cal. Rptr. 839 (1979), alleging no viable appellate issues and requesting the appeals court to conduct its own independent review.  Supp., p. 4, n. 2.

(formerly Rule 28), "[a] petition for review must be served and filed within 10 days after the Court of Appeal decision is final in that court."[3]  Respondent is correct therefore in contending that the conviction became final for purposes of § 2244(d)(1)(A), on July 19, 2003, and the AEDPA one-year limitation period began to run one day later, on July 20, 2003. MTD, p. 3, citing Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001). Therefore, absent any applicable tolling, in order to be timely, the last day for filing a federal petition would have been July 19, 2004.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. However, § 2244(d)(2) can only pause a clock not yet fully run; it cannot "revive" the limitation period once it has run (i.e., restart the clock to zero). Thus, a state court habeas petition filed beyond the expiration of AEDPA's statute of limitations does not toll the limitation period under § 2244(d)(2). See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir.2001).

In the instant case, as respondent demonstrates, petitioner did not file the first of three state court habeas petitions until September of 2006. MTD, p. 4, Lod. Docs. 4-9. The first petition, by application of the mailbox rule,[4] was filed on September 9, 2006, in Butte County Superior and denied on September 21, 2006. MTD, p. 2, Lod. Docs. 4-5. The second state court petition was filed in the Third District Court of Appeals on October 26, 2006 and denied on

---

[3] Quoted from Rule 8.500(e)(1).

[4] Unlike respondent, the court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court, although he arguably is not entitled to it for having, on the face of it, failed to deliver the instant petition to prison authorities within the limitations period. Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988)(pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003)(mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period). In any event, the mailbox rule is inconsequential.

November 9, 2006. Lod. Docs. 6-7. The third petition, directed to the state supreme court, was filed on January 3, 2007, and denied on June 13, 2007. Lod. Docs. 8-9. The instant petition was filed on October 5, 2007. As the statute of limitations expired for the filing of this petition on July 19, 2004, and petitioner is not entitled to statutory tolling, the instant petition is untimely by more than three years.

Although unnecessary on this showing, respondent makes an alternate argument as to why the state habeas petitions could not have tolled the AEDPA statute. MTD, p. 4. He contends that the Butte County Superior Court, by citing In re Clark, 5 Cal.4th 750, 765, [21 Cal. Rptr.2d 509] (1993), expressly found the initial state petition untimely, thus, the first state petition was not "properly filed" pursuant to § 2244(d)(2). Id., citing Pace v. DiGuglielmo, 544 U.S. 408, 414, 417, 12 S. Ct. 1807, 1812, 1814 (2005) (holding "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter" for purposes of § 2244(d)(2)," expressly finding that a state court petition rejected as untimely is not "properly filed" under AEDPA statute tolling provisions). As the only reasoned opinion was set forth in the superior court denial, under Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590 (1991), it is presumed that the later reviewing courts did not silently disregard the last reasoned opinion that the claim was procedurally defective. Thus, it is appropriate to "look through" unexplained orders "to the last reasoned decision...." Id., at 804, 111 S. Ct. 2590. Thus, respondent concludes that the state court petitions could not have tolled the one-year period. MTD, p. 4. Respondent is correct on the law in his alternate argument, but, as noted, it is unnecessary to invoke the argument, given that, on the face of it, petitioner permitted the statutory period to expire by more than two years before even commencing the filing of his state court petitions.

Petitioner goes far afield, as respondent notes in the reply, when he invokes an argument based on procedural default doctrine with respect to California's timeliness rule. Opposition (Opp.), pp. 1-4; Reply, pp. 2-3. That is because " the question whether an application has been 'properly filed,' is quite separate from the question whether the claims *contained in the*

*application* are meritorious and free of procedural bar"; thus, "[o]nly individual *claims,* and not the application containing those claims, can be procedurally defaulted under state law pursuant to our holdings...." Artuz v. Bennett, 531 U.S. 4, 9, 121 S. Ct. 361, 364 (2000) ([emphasis in original][citations omitted]); Pace, supra, at 417, 125 S. Ct. at 1814 (state "time limits no matter their form, are 'filing' conditions" ); Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005) ("[b]ecause the California courts dismissed Bonner's petition as untimely, his petition was not 'properly filed' under AEDPA") . There is no question that petitioner's filing is outside the statutory limitation period of AEDPA; therefore, the only question that does remain is whether petitioner could be entitled to equitable tolling.

Equitable Tolling

In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court for Cent. Dist. of CA. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), itself abrogated by Woodford v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth Circuit found that the statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time.  "In addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller**,** 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Equitable tolling will not be available in most cases because tolling should only be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him to file a petition on time. Beeler, 128 F.3d at 1288-89.  As held in Beeler,  "[w]e have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289. "Mere excusable neglect" is insufficient as an extraordinary circumstance. Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does

5

not constitute such extraordinary circumstances.  See Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).

In the Calderon (Beeler) case, the Court of Appeals held that the district court properly found equitable tolling to allow Beeler more time to file his petition.  Beeler's lead counsel withdrew after accepting employment in another state, and much of the work he left behind was not usable by replacement counsel – a turn of events over which the court found Beeler had no control.  The Court of Appeals held that the district court properly found these were "extraordinary circumstances" sufficient to toll the statute of limitations.[5]  The Ninth Circuit also found extraordinary circumstances in Calderon v. U.S. Dist. Ct. (Kelly), supra, 163 F.3d 530.  The three reasons given which independently justified tolling were: a district court stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time after the court makes a competency determination, and the fact that petitioner did at one time have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any doing by petitioner.  Id. at 541-42.  See also Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling); Miles v. Prunty, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing filing fee were circumstances beyond his control, qualifying him for equitable tolling); Stillman v. Lamarque, 319 F.3d 1199, 1202-03 (9th Cir. 2003) (equitable tolling permitted where litigation coordinator broke a promise to petitioner's counsel to return a signed petition for timely filing); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (sufficiently egregious misconduct by counsel, such as wholly deficient performance, may justify equitable tolling).

\\\\\

---

[5] See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition for certiorari until thirteen months after the denial was entered.

1       "Generally, a litigant seeking equitable tolling bears the burden of establishing
2 two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary
3 circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814;
4 Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the burden of
5 proving that equitable tolling should apply to avoid dismissal of an untimely petition).
6 "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary*
7 circumstances beyond a prisoner's control make it impossible to file a petition on time."
8 Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis added in Miranda]). A
9 petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest
10 the exceptions swallow the rule." Id.

11       According to his counsel, petitioner only belatedly found out from others that he
12 had a right to challenge his conviction on the grounds he raises, that he and his family then
13 retained the services of an inmate paralegal, but that they also had difficulty in obtaining records.
14 Opp., p. 5. Petitioner provides no factual support or offers of proof as to any of these claims, as
15 respondent accurately contends. Reply, pp. 6-7. Moreover, as noted above, ignorance of the law
16 has not been found to warrant equitable tolling. Hughes v. Idaho State Bd. of Corrections, supra,
17 at 909. In addition, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11(C.D. Cal. 1997), the court
18 found that a petitioner's circumstances were not extraordinary in the following circumstances:
19 inability to obtain transcripts from court reporters, and general prison lockdowns preventing the
20 prisoner's access to the library and a typewriter which were necessary to his motion. See also
21 Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on incompetence of jailhouse
22 lawyer not sufficient to justify cause to excuse procedural default); Turner v. Johnson, 177 F.3d
23 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did not toll statute); Eisermann v.
24 Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal expertise does not qualify
25 prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998)
26 (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J. 1998) (delay in receipt of

transcripts does not justify equitable tolling).  Nor has the undersigned ever been persuaded that a petitioner's reliance on a jailhouse lawyer can have been contemplated as coming within the holding of Spitsyn v. Moore, supra.  By simply making bare assertions about not having learned of his right to pursue his habeas claims timely or having had unexplained difficulties in obtaining his records, or having recently paid an inmate to assist him, petitioner makes a deficient showing to prove entitlement to equitable tolling.  These do not rise to the level of being "extraordinary circumstances" beyond petitioner's control in an equitable tolling context, but appear, instead, to be attributable, at most, to a lack of diligence.  See, e.g., Lott v. Mueller, supra, at 922.

However, petitioner's counsel does appear to rest his argument for equitable tolling primarily on petitioner's history of mental disease or illness that is "well documented" and his inability "to process much of the legal process on his own." Opp., p. 5.  "Where a habeas petitioner's mental incompetency in fact caused him to fail to meet his AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled." Laws v. LaMarque, 351 F.3d 919, 923 (9th Cir. 2003); see also Calderon v. U.S. Dist. Court for Cent. Dist. Of Cal. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (mental incompetency considered an extraordinary circumstance beyond the prisoner's control) (overruled on other grounds by Woodford v. Garceau, 538 U.S. 202, 206, 123 S.Ct. 1398 (2003)).  A petitioner's mental illness tolls the limitations period only if "the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996).

Although petitioner notes that the Ninth Circuit has noted that "[d]etermining whether equitable tolling is necessary is a 'fact-specific inquiry,'" Spitsyn, 345 F.3d at 799, petitioner provides nothing by way of any affidavit or medical record to support the bare claim in in the opposition.  Looking to the supplemental points and authorities, petitioner's counsel there did provide an unauthenticated letter, apparently from petitioner's mother, dated 11-15-02, claiming, inter alia, that petitioner has a "bipolar condition" that is "long standing," for which

medication is required. Exhibit A to Supp. P&As, pp. 17-19. Exhibit B, pp. 21-30, is an unauthenticated copy of an OMNI IV Personality Disorder Inventory Interpretive Report for petitioner, dated 7/07/2004, indicating that as of 7/08/04, petitioner was assessed with a Bipolar I Disorder (Axis I) and an Antisocial Personality Disorder (Axis III).

The Ninth Circuit has found that a petitioner's ability to file state and federal petitions from a certain point with inmate assistance "cannot substitute for development of the factual record concerning his mental state prior to that period." Laws v. LaMarque, 351 F.3d at 924.

In support of the reply to the opposition, respondent's counsel lodged what he asserts is a copy of petitioner's mental health record. See Lodged Documents 10-12, identified as petitioner's mental health records for 2003; his mental health records for January 2004, through August 10, 2004; and his mental health records for August 12, 2004, to the present, respectively. Given that the court has determined that the AEDPA statute had run after July 19, 2004, the relevant period for equitable tolling purposes would include the period from the date of finality of the period of direct review on July 19, 2003, through the filing of petitioner's first state habeas petition in September of 2006 (notwithstanding that the petition was filed beyond the expiration of the AEDPA statute of limitations, and the initial petition, found untimely under California law, was never "properly filed" for which no statutory tolling is available under § 2244(d)). Ferguson v. Palmateer, 321 F.3d at 823; Bonner v. Carey, 425 F.3d at 1149.

Respondent concedes that, during the relevant period, petitioner was included in the mental health treatment population and on psychotropic medication for suffering from mood swings, depression, and bipolar disorder, but argues that his mental health was not so severely impaired that he was unable to form rationale thoughts and to conduct himself appropriately. In fact, respondent maintains, the records reveal petitioner's inclusion in the mental health treatment program was on an outpatient, general population basis and that he was seen only six times during the relevant limitations period in 2003, during which time he was noted to be oriented,

cooperative, and alert despite being depressed. Reply, p. 7, Lod. Doc. 10.

Although, respondent notes, petitioner was seen more frequently in 2004 during the relevant limitations period and was evidently still suffering from depression, he was predominantly observed to be alert and cooperative, with clear speech, good insight, and appropriate and oriented cognition, even noted to be bright and articulate at one point. While respondent acknowledges that petitioner attempted both suicide and castration on June 28, 2004, he also argues that within less than one month of the expiration of the statutory limitations period, petitioner indicated a month later that his medications were satisfactory and that he was able to control any urges to harm himself, when he was again noted to be alert, with good speech, and with appropriate cognitive functions. Reply, p. 7, Lod. Doc. 11.

Respondent contends that thereafter petitioner's mental health condition varied insignificantly over the next few years. He asserts that in the fall of 2005,[6] a year before he filed his first state post-conviction collateral challenge, petitioner was employed on a full-time basis, apparently working for five, six-hour days per week (37.5 hours per week), according to the record. Reply, pp. 7-8, Lod. Docs. 12 & 13.

Respondent's argument that petitioner's ability to hold down the job attests to his ability to function during that time to a high degree has some merit, and undermines any contention that petitioner could not have filed his first post-conviction collateral challenge until September 2006, more than a year after he began his job and over two years following the expiration of limitations period. Noting that petitioner's next job assignment apparently did not occur until April 18, 2007 (Lod. Doc. 13), respondent speculates that the gap in job assignments could be attributable to petitioner's having begun to pursue his post-conviction collateral actions, with the last such action being filed on January 9, 2007.

---

[6] Respondent dates the work assignment as extending from September 23, 2005, until December 14, 2005. Lod. Doc. 13 (inmate job assignment history), but the underlying documentation produced appears to indicate that the vocational assignment extended from October 2, 2005, through January 7, 2006. Lod. Doc. 12.

The court's review of the mental health services/medical records produced largely confirms respondent's representation of the condition of petitioner's mental health during the relevant periods. For example, while he was understandably depressed in trying to adjust to a 25-year prison term, he was indeed evidently found oriented and alert in 2003. On March 13, 2003, and again, on April 11, 2003, he was noted as being: "alert, coherent, oriented x 3, neatly groomed, cooperative." In October of 2003, in psychiatric evaluations, petitioner evidently spoke of having mood swings once or twice a week and having some "bad depressive episodes," of being "miserable" so far from his family. The psychiatrist notes the patient as "alert" with a "blunted," but appropriate, affect and "moderately depressed." Lod. Doc. 10. In October 27, 2004, a Dr. Vance Norum, in a psychiatric evaluation, notes that petitioner was diagnosed with "Bipolar Disorder" and while found to be "dysphoric" was "alert...calm, cooperative... nonpsychotic, nonmanic, nondepressed...." and seemed to be suffering from "excessive guilt...." On January 5, 2005, a staff psychologist notes that petitioner stated "I'm really bored," also noting that his "meds" were "OK" and that petitioner's speech was "clear, linear, coherent...." and his mood was "improved." Lod. Doc. 12. There are multiple references to petitioner's "clear, linear, calm speech" in 2005.

The record indicates that petitioner suffered from mood swings, varying degrees of depression and was generally prescribed medication. But nothing indicates that he was found delusional and there is no definitive evidence of mental incapacitation so significant that it could have prevented him from proceeding with his habeas petitions. Petitioner, on whom the burden rests, as noted, produced no documentary evidence in support of his opposition and the unauthenticated exhibits attached to the supplemental points and authorities are inadequate. Respondent references <u>Gaston v. Palmer,</u> 417 F.3d 1030, 1034 (9th Cir. 2005), wherein a petitioner who filed state habeas petition before and after statute of limitations period was properly denied equitable tolling because he was not mentally incapable of filing a timely federal habeas petition. While there is little doubt that petitioner continues to have some mental health

impairment, mental health infirmities are not uncommon among those who are imprisoned; moreover, despite this condition, petitioner eventually, although belatedly, did begin filing collateral challenges. Petitioner has failed to meet his burden to show that he suffered from "'extraordinary circumstance beyond [his] control," such that the deadline should be equitably tolled for the extended period for which petitioner seeks it. Nor is an evidentiary hearing on his claim to entitlement to equitable tolling warranted where further factual development, beyond the apparently comprehensive mental health record produced, is unnecessary. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schiro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933 (2007). "We have previously held that a district court in a habeas corpus proceeding "'need not conduct full evidentiary hearings,'" but may instead "'expand the record ... with discovery and documentary evidence.'" Williams v. Woodford, 384 F.3d 567, 590 (9th Cir. 2004).

Accordingly, IT IS ORDERED that the Clerk of the Court is to substitute Michael Martel, Acting Warden of Mule Creek State Prison, in place of D.K. Sisto, as respondent in the court's docket.

IT IS FURTHER ORDERED that the record is expanded pursuant to Rule 7 of the Rules for § 2254 Cases to include the medical records discussed in this motion.

IT IS RECOMMENDED that respondent's motion to dismiss the petition as untimely under AEDPA, filed on November 26, 2008 (docket # 20), be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/25/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
camp2132.mtd

13